# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**JOEL SCHUMM**
Clinical Professor of Law

**JAMES BANISTER**
Certified Legal Intern
Appellate Clinic
I.U. Robert H. McKinney School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Dec 12 2013, 10:16 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1304-CR-195 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary L. Miller, Judge
Cause No. 49G21-1203-FD-10359

**December 12, 2013**

**OPINION - FOR PUBLICATION**

**SULLIVAN, Senior Judge**

Anthony Smith was convicted by a jury of Class A misdemeanor invasion of privacy for knowingly violating a protective order. He now appeals, claiming the evidence is insufficient to sustain his conviction. We affirm.[1]

In early January 2012, Sara Pearson and Smith ended their two-year relationship, and Smith moved out of Pearson's home. On January 20, 2012, Pearson obtained an ex parte protective order against Smith. The next day, she had all the locks on her home changed by a locksmith.

On January 26, 2012, Detective Andre Bell of the Indianapolis Metropolitan Police Department notified Smith of the protective order during a phone conversation in which Detective Bell tried to make arrangements to recover Pearson's Jeep from him. Specifically, Detective Bell told Smith that he was being served with a protective order and that he could not "call, mail, text, e-mail, anything, or make any type of threats or contact with" Pearson. Tr. pp. 115, 125. Detective Bell then entered his verbal service of the protective order to Smith in the Indiana Protection Order Registry. Additionally, on January 31, 2012, Pearson "mentioned the protective order" in a text message to Smith. Id. at 36.

On February 11, 2012, Pearson was in the midst of moving out of her house and getting it ready for sale. That day, Smith texted Pearson and said he wanted to get his weightlifting equipment from her house. Pearson texted back that he could pick up his equipment at 2:30 p.m., believing she could arrange for the police to be there by then to

---

[1] Smith has filed a Motion for Oral Argument. We deny this motion by separate order issued contemporaneously with this opinion.

2

supervise the transfer. Smith responded that he could not make it at 2:30 and suggested the next day. Pearson said no.

Pearson left her house that morning and returned home around 12:45 p.m. to meet an appraiser. She started a fire in the fireplace and then headed toward the door to the garage. When she opened the door, Smith was standing directly in front of her. Pearson tried to shove the door closed, but when Smith put his foot in the door, she ran down the hallway toward the kitchen. Smith grabbed her by her sweatshirt, got her down to the floor, stood over her, and took her phone and pepper spray. He then let her up, and a little after 1:00 p.m., the appraiser rang the doorbell. Smith fled. Pearson let the appraiser in and called 911. The police arrived and found damage to the door leading into the garage from the backyard.

The State charged Smith with Class D felony residential entry and Class A misdemeanor invasion of privacy. It later alleged he was a habitual offender.

At his jury trial, Smith acknowledged that a person identifying himself as Detective Bell informed him of the protective order. However, he denied making any contact with Pearson. He claimed that Pearson texted him on February 11, 2012, to tell him to get his belongings out of her garage but that he did not respond to any of her messages. He further claimed he was at his home at the time of the alleged incident.

The jury found Smith guilty of residential entry and invasion of privacy, and the trial court adjudicated him a habitual offender. He was later sentenced to an aggregate term of six and a half years: three years for residential entry enhanced by three and a half years for being a habitual offender, and a concurrent one year for invasion of privacy.

3

Smith's sole challenge on appeal is to the sufficiency of the evidence sustaining his invasion of privacy conviction.[2] In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of witnesses. Bailey v. State, 979 N.E.2d 133, 135 (Ind. 2012). Rather, we look to the evidence and reasonable inferences drawn therefrom that support the verdict. Id. We affirm if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id.

To convict Smith of invasion of privacy as charged here, the State had to prove beyond a reasonable doubt that he knowingly violated the protective order by "going to [Pearson's] residence and/or entering her house." Appellant's App. p. 27; see Ind. Code § 35-46-1-15.1(1) (2010).

The evidence most favorable to the verdict shows that Detective Bell verbally served Smith with the protective order on January 26, 2012, and explained that he could not have any contact with Pearson. Smith himself even acknowledged at trial that Detective Bell called him and informed him of the protective order. Despite being verbally served with the order, Smith broke into Pearson's house and confronted her less than three weeks later. This evidence shows Smith had actual knowledge of the protective order but violated it anyway. See Dixon v. State, 869 N.E.2d 516, 520 (Ind. Ct. App. 2007) (regardless of whether Bruno actually gave Dixon copy of protective order, evidence sufficient to sustain invasion of privacy conviction where Officer Gomez

---

[2] As Smith's one-year sentence for invasion of privacy was ordered to be served concurrent with his six-and-a-half-year sentence for residential entry with the habitual offender enhancement, reversal of his invasion of privacy conviction would not affect his aggregate sentence.

4

gave Dixon verbal notice of protective order and its provision to stay away from Bruno's residence and where Dixon returned to Bruno's home hours after the verbal notice).

Smith nonetheless argues: (1) he did not have actual knowledge of the order because Detective Bell did not inform him of all its specific terms, and (2) he did not knowingly violate the order because Pearson's actions toward him indicated it was no longer valid. We address each claim in turn.

## I. SPECIFIC TERMS

Smith argues he did not have actual knowledge of the order because Detective Bell did not inform him of all its specific terms. He includes a chart in his brief comparing what Detective Bell told him (that he could not "call, mail, text, e-mail, anything, or make any type of threats or contact with" Pearson) to a bevy of specific terms in the protective order. See Appellant's Br. pp. 9-10.

Smith's argument is unpersuasive. While it is true that Detective Bell did not list verbatim every specific action prohibited by the protective order, he adequately informed Smith that he could not make any type of threat or have any type of contact with Pearson. There can be no question that breaking into Pearson's home and confronting her was prohibited conduct under Detective Bell's instructions.

Nor does Hendricks v. State, 649 N.E.2d 1050 (Ind. Ct. App. 1995), support Smith's claim as he suggests. In that case, Bernadette Mercado obtained a protective order preventing Michael Hendricks from contacting her family. When Hendricks called Mercado's home six days later, Mercado informed him of the protective order and told him he was not to have any contact with her family. The same day, Hendricks called

5

again.  An officer was at the Mercado home and "also told Hendricks of the emergency protective order and the parameters of the order."  Id. at 1052.  Hendricks came within 1000 feet of Mercado's daughter the next day and was charged with invasion of privacy.  This Court found the evidence sufficient to show Hendricks knowingly violated the protective order.  Id.

Smith latches on to the language in Hendricks that the defendant was informed not only of the protective order but also of its "parameters."  Smith essentially equates these "parameters" with all of a protective order's specific terms and thus reasons that Detective Bell had to inform him of every specific term.

We reject this reading.  As Smith acknowledges, nothing in Hendricks leads to a firm conclusion that the defendant was informed of every specific term of the protective order.  See Appellant's Br. p. 11.  Even if he was so informed, nothing in Hendricks suggests that knowledge of every specific term of a protective order is necessary to have the requisite knowledge sufficient to sustain an invasion of privacy conviction.

Instead, Hendricks supports a finding of knowledge here.  There, as in the case before us, the evidence of knowledge was sufficient where the protected party and a law enforcement officer informed the defendant of the protective order.  Our Supreme Court recently discussed Hendricks and noted that just a single notification of the protective order and its prohibition on contact would have been sufficient:

> The evidence that Bernadette Mercado informed Hendricks of the protective order and its parameters (that he was not to have any contact with the family) could have by itself been sufficient to prove Hendricks' knowledge of the protective order.  The additional notification by the

6

officer to Hendricks would simply have been cumulative evidence of his knowledge of the protective order.

Joslyn v. State, 942 N.E.2d 809, 813 (Ind. 2011).  Thus, there is ample evidence of knowledge here where Detective Bell and Pearson each informed Smith of the protective order and where Detective Bell additionally explained that Smith could not make any type of contact with Pearson.

Smith distinguishes Joslyn, where the evidence was sufficient to sustain the defendant's invasion of privacy convictions.  Again, we find instead that Joslyn supports Smith's conviction.  In that case, a process server testified that she left a copy of the protective order at Joslyn's home, but there was no indication that she also sent a copy to his house by first class mail as required under our Trial Rules.  Even so, Joslyn admitted in police statements and again at trial that he was aware of the protective order and had read its terms.  Our Supreme Court rejected Joslyn's sufficiency claim on appeal, holding that the minor defect in service was cured by his admission that he had received the order at his home.  Id. at 810, 813-14.

Smith claims that, unlike Joslyn, he had no opportunity to read the protective order and its terms.  This distinction is of no moment.  Smith, like Joslyn, had actual notice that a protective order prohibited any contact with the protected person.  This evidence, as in Joslyn, is sufficient to show his knowledge of the order.

## II. PEARSON'S ACTIONS

Smith also argues he did not knowingly violate the order because Pearson's actions toward him indicated it was no longer valid.  He suggests that Tharp v. State, 942

N.E.2d 814 (Ind. 2011), mandates reversal here. In <u>Tharp</u>, Lisa Pitzer obtained a protective order against Jeffrey Tharp but was found riding in a vehicle with him a few months later. The trial court convicted Tharp of invasion of privacy after a bench trial, indicating it credited Pitzer's testimony that she told Tharp about the protective order. The Indiana Supreme Court reversed the conviction, noting Pitzer's testimony was that she told him at the same time that the order was no longer valid. <u>See</u> <u>id.</u> at 817 ("Well, I had told him there was a protective order, but I had thought it had been dropped already, because I had been down there. . . . I told him it was no contact, and that I had thought I had took care of it. . . . That we had no contact and I had thought that I had went and had it uplifted."). The Court stated, "We conclude that the mixed messages from Pitzer are oral notice of the type that is insufficient for a conviction." <u>Id.</u> at 818.

Smith claims he received mixed messages akin to those in <u>Tharp</u> because Pearson's actions in communicating with him through text messages and arranging a time for him to pick up his personal possessions from her house gave him reason to believe that the protective order was no longer valid. We disagree. The Court found Tharp received "mixed messages" because Pitzer told him the protective order was no longer in effect at the same time she told him of its existence in the first place. No such mixed messages occurred here. Detective Bell unequivocally told Smith that the protective order prohibited him from making any type of contact with Pearson. Pearson also informed him of the protective order. Furthermore, although Pearson told Smith he could retrieve his property at 2:30 p.m. on February 11, when Smith told her he could not do so at that time and requested to do so at a later date, she specifically told him no. Neither

8

Detective Bell nor Pearson told Smith that the order was no longer in effect. Tharp is distinguishable on this basis and thus provides no relief here.

Moreover, when determining whether Smith committed the offense of invasion of privacy, we do not consider whether Pearson knowingly ignored the protective order but, rather, whether Smith knowingly violated the order. See Dixon, 869 N.E.2d at 520; Ind. Code § 34-26-5-11 (2002) ("If a respondent is excluded from the residence of a petitioner or ordered to stay away from a petitioner, an invitation by the petitioner to do so does not waive or nullify an order for protection."). Pearson's text messages to Smith simply could not serve as a basis for Smith to reasonably believe that the protective order had been dismissed.

Related to his first argument, Smith claims that knowledge of every term of the protective order would have prevented any confusion on this point because the order specifically provided, "If so ordered by the court, the Respondent is forbidden to enter or stay at the Petitioner's residence or residence of any child who is the subject of the order, even if invited to do so by the Petitioner or any other person. In no event is the order for protection voided." State's Ex. 7-R (capitalization omitted). Although this provision would have informed Smith of a specific instance in which contact was prohibited—namely, that he could not go to Pearson's residence even if invited—that provision was adequately covered by Detective Bell's instructions that he could not make any type of contact with Pearson.

We therefore conclude that the evidence is sufficient to sustain Smith's invasion of privacy conviction.

9

Affirmed.

BARNES, J., and BRADFORD, J., concur.