## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 22 2015, 9:49 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender's Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Evelyn Butcher,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 22, 2015

Court of Appeals Case No.
49A02-1412-CR-831

Appeal from the Marion Superior Court

Lower Court Cause No.
49G21-1408-CM-38640

The Honorable Tiffany Vivo, Commissioner

**Pyle, Judge.**

# Statement of the Case

Appellant/Defendant, Evelyn Butcher ("Evelyn"), appeals her conviction for Class A misdemeanor invasion of privacy,[1] which was based on an incident when she called and visited the residence of her former husband, who had a protective order against her. On appeal, she argues that there was insufficient evidence to support her conviction because there was no indication that she knew the terms of the protective order and, therefore, knew that she could not visit her former husband's residence or call him. She also argues that her conviction was contrary to the purpose and intent behind the Civil Protection Order Act ("CPOA") because she had formerly been a victim of her husband's domestic abuse. We conclude that, because Evelyn's husband told her about the protective order and told her she could not come around anymore, there was sufficient evidence that Evelyn knew the protective order's terms. We also conclude that Evelyn waived her CPOA claim by failing to raise it below.

We affirm.

# Issues

1. Whether there was sufficient evidence to support Evelyn's conviction for Class A misdemeanor invasion of privacy.

2. Whether Evelyn's conviction is contrary to the purpose and intent behind the CPOA.

---

[1] IND. CODE § 35-46-1-15.1(1).

## Facts

Prior to 2014, Evelyn was married to Darrell Butcher ("Darrell"). In February 2013, Darrell was arrested for domestic battery against Evelyn, but she did not cooperate in the prosecution. (Tr. 53). Later, in December of that same year, Darrell was again arrested for domestic battery of Evelyn. This time, he was convicted of the charge and placed on probation. After the conviction, Evelyn filed for divorce and began dating one of Darrell's long time family friends, Bobby McIntosh ("McIntosh").

Thereafter, on July 7, 2014, Darrell filed an ex parte petition with the trial court requesting a protective order against Evelyn. He claimed that she had been stalking him and physically abusive towards him. The trial court granted the petition and issued an ex parte protective order, which provided that Evelyn was prohibited from "harassing, annoying, telephoning, contacting, or directly or indirectly communicating with [Darrell]." (State's Ex. 22 at 21). The order also required Evelyn to "stay away from" Darrell's residence, school, and place of employment. (State's Ex. 22 at 21). The trial court then issued an order setting the matter for a hearing on August 5, 2014.

The Indiana Protection Order Registry, which the State presented as evidence at trial, documents that one or both of the trial court's orders—the ex parte protective order and the order setting the matter for a hearing—were served on Evelyn at Darrell's place of residence, the residence they had previously shared. An individual from the Marion County Sheriff's Department left notice of one or both of the orders at the front door of the residence at that address on July 9,

2014, and the Sheriff Department mailed notice of one or both of the orders to the same address on July 10, 2014. Evelyn was not living at that residence at the time because she was, instead, living with McIntosh. However, Evelyn was also served with one or both of the orders in court on July 12, 2014. The Registry does not document which of the trial court's orders were served on which dates.

[5] Two days later, on July 14, 2014, Darrell saw Evelyn leave the backyard of his residence. He went to investigate and discovered that she had drained his swimming pool. Later that day, she called him and left him a voicemail stating that "the other cap's coming off, too, today." (State's Ex. 1). In another voicemail the same day, she said, "You got a restraining order on me. You are not allowed to call me. Why are you calling my phone? Why are you calling my family? . . . You can have it all." (State's Ex. 1).

[6] On August 8, 2014, the State charged Evelyn with Class A misdemeanor invasion of privacy, alleging that she had violated the protective order either by visiting Darrell's residence or by telephoning him. On September 19, 2014, the State amended the charging information to add a second charge of Class B misdemeanor criminal mischief, alleging that Evelyn had recklessly damaged or defaced Darrell's pool.

[7] On October 6, 2014 and November 5, 2014, the trial court held a bench trial on the charges. At trial, Darrell admitted that, prior to receiving Evelyn's voicemail messages on July 14, 2014, he had contacted her family members to

ask them to get her possessions out of the house. He also admitted to leaving a note at McIntosh's house stating "You're hit." (Tr. 25). However, he denied having had any contact with Evelyn.

[8] Next, Evelyn's boyfriend, McIntosh, testified and said that, since he had started dating Evelyn, he had experienced several incidents of property vandalism, including having his car tires slashed, his "grills" flipped over, and his backyard torn up. (Tr. 42). He reported that, prior to dating Evelyn, he had not experienced any property vandalism in the four years he had lived on his property. In addition, McIntosh also testified that he had been required to undergo a drug test at work because someone, whom he believed to be Darrell, had called his work and left an anonymous tip stating that he was on drugs.

[9] Finally, Evelyn testified. She admitted that she had called Darrell on July 14, 2014, but testified that she had done so because he "kept calling [her] . . . over and over and over," and had also called her sister. (Tr. 57).

[10] At the conclusion of the evidence, the trial court found Evelyn not guilty of her criminal mischief charge but guilty of invasion of privacy. The court sentenced her to 180 days, suspended to probation. Evelyn now appeals.

# Decision

[11] On appeal, Evelyn argues that: (1) there was insufficient evidence to support her conviction for invasion of privacy; and (2) that her conviction was contrary to the purpose and intent behind the CPOA. We will address each of these arguments in turn.

## 1. Sufficiency

The standard of review for a sufficiency of the evidence claim is that this Court should only reverse a conviction when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied.* We do not reweigh evidence or judge the credibility of witnesses. *Id.* at 213. In addition, we only consider the evidence most favorable to the judgment and the reasonable inferences stemming from that evidence. *Id.*

In order to convict Evelyn of invasion of privacy, the State had to prove that she knowingly or intentionally violated a protective order. I.C. § 35-46-1-15.1(1). On appeal, Evelyn asserts that there was no evidence that she had received the order or knew of its terms and, therefore, she could not have "knowingly" violated it. *See id.* In support of this argument, she notes that the order was served at Darrell's residence, but she was not living there. She also points to the fact that Darrell wrote in his petition requesting the protective order that he was the sole owner of the residence. She claims that this admission was evidence that she could not have received the order served at that address. With respect to the in-court service of the trial court's order on July 12, 2014, Evelyn argues that the Indiana Protection Order Registry does not specify which trial court order was served that day. Finally, she acknowledges that Darrell told her about the protective order, but she contends that this evidence was not sufficient to prove that she knew of its terms.

[14] We have previously noted that the legislature's intent behind the Indiana Code provisions regarding protective orders was that they be interpreted in a way that will "'promote the: protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and [] prevent[] future domestic and family violence.'" *Joslyn v. State*, 942 N.E.2d 809, 813 (Ind. 2011) (quoting I.C. § 34-26-5-1).

[15] Even assuming that Evelyn was not properly served with notice of the ex parte order on any of the dates listed in the Indiana Protection Order Registry, Indiana Courts have held that proper service of an ex parte order is not required to prove that a respondent has knowledge of the order. *See, e.g., Joslyn*, 942 N.E.2d at 811-12 ("the statutes defining the crimes of stalking and invasion of privacy do not require actual service of a protective order for a conviction.") Oral notice may be sufficient if it includes "adequate indication of the order's terms." *Tharp v. State*, 942 N.E.2d 814, 818 (Ind. 2015). Further, the notice does not have to include notice of every specific action prohibited by the protective order. *Smith v. State*, 999 N.E.2d 914, 916 (Ind. Ct. App. 2013), *trans. denied.* In *Joslyn*, our supreme court discussed *Hendrix v. State*, 649 N.E.2d 1050 (Ind. Ct. App. 1995), and noted that "a single notification of the protective order and its prohibition on contact would have been sufficient[.]" *Id.* (interpreting *Joslyn*, 942 N.E.2d at 813). In *Smith*, there was sufficient evidence of Smith's knowledge and violation of a protective order where he was orally informed that he could not make any contact with the subject of the protective order and then he broke into the subject's home and confronted her. *Id.* at 916.

[16] Here, Evelyn's knowledge of the terms of Darrell's protective order was similar to Smith's knowledge in *Smith*. Even if we assumed that she never received actual notice of the order, Darrell testified that the day he received the protective order he "told [Evelyn] [he] had a restraining order against her and not to come around." (Tr. 30). Evelyn argues that she interpreted this statement to mean that she was not supposed to have in-person contact with Darrell, but we find that another logical interpretation of the phrase "not to come around" is that Evelyn could not come to Darrell's residence. (Tr. 30). Therefore, when we interpret the evidence in the light favorable to the trial court's judgment, Evelyn (1) had knowledge that she could not visit Darrell's home; and (2) "knowingly" violated the protective order when she visited the home on July 14, 2014.

[17] Further, as the trial court found, Evelyn's voicemail messages to Darrell indicate that she had knowledge of the restraining order. She stated in the messages, "You got a restraining order on me. You are not allowed to call me. Why are you calling my phone?" (State's Ex. 1). While this statement indicates Evelyn's mistaken belief that Darrell was prohibited from contacting her as a result of the protective order, it also demonstrates that she knew that telephone contact was a type of contact prohibited under a protective order. Thus, there was evidence that she knew she was violating the protective order when she called Darrell and left voicemail messages. In light of the above factors, we conclude that there was sufficient evidence of Evelyn's knowledge of the protective order to support her conviction.

## 2. Civil Protection Order Act

[18] Next, Evelyn argues that her conviction was contrary to the purpose and intent behind the CPOA. In INDIANA CODE § 34-26-5-1, the legislature stated that its purpose for enacting the Act was "to promote the: (1) protection and safety of all victims of domestic or family violence in a fair, prompt, and effective manner; and (2) prevention of future domestic and family violence." Evelyn asserts that her conviction is contrary to this intent because Darrell has a history of domestic violence against her, and, according to her, was using the protective order as a sword rather than a shield to vandalize McIntosh's property.

[19] However, we need not address this argument because Evelyn did not argue it below and has therefore waived it. *See Griffin v. State*, 16 N.E.3d 997, 1006 (Ind. Ct. App. 2014) (quoting *Showalter v. Town of Thorntown*, 902 N.E.2d 338, 342 (Ind. Ct. App. 2009), *trans. denied*) ("[S]ubstantive questions independent in character and not within the issues or not presented to the trial court shall not be first made upon appeal. . . . The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider.") (emphasis omitted).

Affirmed.

Crone, J., and Brown, J., concur.