## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2018, 9:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark F. James
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Duane Lamar Herron,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

July 31, 2018

Court of Appeals Case No.
71A03-1712-CR-2798

Appeal from the St. Joseph Superior Court

The Honorable Jeffrey L. Sanford, Judge

Trial Court Cause No.
71D03-1708-F6-708, 71D03-1708-F6-710, 71D03-1501-F6-17

**Altice, Judge.**

## Case Summary

[1] Duane Lamar Herron appeals his convictions, under separate causes, for two counts of Level 6 felony invasion of privacy and one count of Class A misdemeanor resisting law enforcement. He argues that the evidence was insufficient to support each conviction.

[2] We affirm.

## Facts & Procedural History

[3] On February 21, 2017, Margaret Martinez obtained a protective order against Herron, her boyfriend of several months. A copy of the protective order was left on the door of Herron's mother's home two days later.[1] Herron went to Martinez's home several days later, and she called the police. When the police arrived, Herron denied knowledge of the protective order. Herron was arrested and charged with invasion of privacy. Following a bench trial, at which Herron represented himself and the protective order was admitted into evidence, Herron was found not guilty on April 5, 2017.

[4] Thereafter, Herron discussed the protective order with Martinez on more than one occasion, as the two continued to see each other. Martinez filled out dismissal paperwork for the protective order at Herron's direction and gave it to him to file with the court, but Herron never did so. The protective order remains active and is not set to expire until February 21, 2019.

---

[1] Herron did not have his own residence and often stayed with his mother and received mail at her home.

[5] On July 25, 2017, Herron went to the fast food restaurant where Martinez was working. He was upset because Martinez had not been responding to his text messages. To calm him down and not make a scene, Martinez sat with him for a bit and then went outside with him. They began arguing outside. When Martinez turned to walk away, Herron grabbed her cellphone from her back pocket and fled on foot. The police were called to the scene, but Herron could not be located.

[6] Two days later, Herron called Martinez and accused her of being with another man. He then showed up on her front porch. Herron threatened Martinez with violence and death and indicated that he would rather go back to prison than to let her go. Martinez refused to let him in, calling the police instead. Martinez informed dispatch that Herron might be armed with a knife.

[7] Officers Shawn Fredenburg and Ryan O'Neill of the South Bend Police Department arrived on the scene. As they walked up to the residence in full police uniform, Martinez came onto the porch, and Herron demanded to know why the officers were there. Herron refused requests from the officers to come off the porch. The officers then went onto the porch to arrest Herron for violating the protective order.

[8] When Herron refused to turn around to be handcuffed, each officer grabbed one of his arms. Herron then "started to try to pull away and thrash back and forth". *Transcript Vol. 2* at 132. The officers attempted to gain control of Herron for about thirty seconds in "just kind of [a] furious back and forth" as

Herron tried to get away. *Id*. Officer Fredenburg then issued a knee strike to Herron, which proved ineffective. After an additional struggle, Officer Fredenburg punched Herron in the face and was able to gain control over him with Herron stating, "I'm done". *Id*. at 119. A third officer who had just arrived on the scene was then able to place handcuffs on him.

[9] On August 2, 2017, the State charged Herron under cause number 71D03-1798-F6-708 (F6-708) for the events of July 27, 2017: Class A misdemeanor invasion of privacy (Count I); Level 6 felony intimidation (Count II); Class A misdemeanor resisting law enforcement (Count III); and Level 6 felony invasion of privacy with a prior conviction for invasion of privacy[2] (Count IV). On that same date, the State charged Herron under cause number 71D03-1708-F6-710 (F6-710) regarding the events of July 25, 2017: Class A misdemeanor invasion of privacy (Count I); Class A misdemeanor conversion (Count II); and Level 6 felony invasion of privacy with a prior conviction for invasion of privacy (Count III).

[10] In both cases, Herron waived his right to a jury trial and chose to represent himself. A bench trial was conducted in each cause on September 29, 2017, with F6-708 being heard in the morning and F6-710 being heard in the afternoon. The trial court took both matters under advisement and, thereafter, found Herron guilty as charged in both causes. At the joint sentencing hearing

---

[2] Herron has a prior conviction under cause number 71D08-1507-F6-480 for three counts of Class A misdemeanor invasion of privacy. He was sentenced in that case on January 11, 2016.

on November 9, 2017, the trial court entered judgments of conviction on Counts II, III, and IV in F6-708 and Counts II and III in F6-710. The court imposed an aggregate sentence of sixty months in prison and recommended purposeful incarceration.

[11] Herron appeals, arguing that the evidence was insufficient with respect to his convictions for invasion of privacy and resisting law enforcement. He does not challenge his convictions for intimidation and conversion on appeal.

## Discussion & Decision

[12] When we consider a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess the credibility of the witnesses. *Suggs v. State*, 51 N.E.3d 1190, 1193 (Ind. 2016). Instead, we consider only the evidence and reasonable inferences supporting the conviction. *Id*. We will affirm if there is probative evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id*.

[13] With respect to the convictions for invasion of privacy, Herron argues that he did not knowingly violate the protective order because he lacked knowledge of its existence. Specifically, he asserts that he was not served with notice of the protective order and that Martinez allowed him to be around her on many occasions despite the protective order.

[14] The State was required to prove beyond a reasonable doubt that Herron knowingly or intentionally violated the protective order. *See* Ind. Code § 35-46-

1-15.1. The State, however, was not required to establish that Herron was actually served with the protective order. *See Joslyn v. State*, 942 N.E.2d 809, 811-12 (Ind. 2011). All that was required was evidence that Herron had actual knowledge of the order and adequate indication of its terms. *See Tharp v. State*, 942 N.E.2d 814, 818 (Ind. 2011).

[15] The evidence clearly establishes that Herron had actual knowledge of the protective order and its terms when he had contact with Martinez on July 25 and 27, 2017. Indeed, only months earlier he had been arrested, charged, and tried on allegations that he had violated the very same protective order. Herron represented himself at that trial. Further, Herron had multiple conversations with Martinez regarding the protective order and his desire that she have it dismissed. He even went so far as to have her fill out a form seeking dismissal of the protective order. He took that form but never filed it with the court. Herron's self-serving claims that he was not aware that the protective order was in effect lack merit. Further, Martinez's alleged willingness to allow Herron to be around her despite the protective order is of no moment. *See Smith v. State*, 999 N.E.2d 914, 918 (Ind. Ct. App. 2013) ("when determining whether [defendant] committed the offense of invasion of privacy, we do not consider whether [victim] knowingly ignored the protective order but, rather, whether [defendant] knowingly violated the order"), *trans. denied*; *see also* Ind. Code § 34-26-5-11 ("If a respondent is excluded from the residence of a petitioner or ordered to stay away from a petitioner, an invitation by the petitioner to do so does not waive or nullify an order for protection.").

[16] Turning to the conviction for resisting law enforcement, Herron argues that the State failed to establish that he forcibly resisted the officers.[3] He asserts – wrongly – that Officers Fredenburg and O'Neill testified he was "only pulling his arms away." *Appellant's Brief* at 9.

[17] Our Supreme Court has summarized the "forcibly" element as follows:

> [N]ot every passive – or even active – response to a police officer constitutes the offense of resisting law enforcement, even when that response compels the officer to use force. Instead, a person "forcibly" resists, obstructs, or interferes with a police officer when he or she uses strong, powerful, violent means to impede an officer in the lawful execution of his or her duties. But this should not be understood as requiring an overwhelming or extreme level of force. The element may be satisfied with even a modest exertion of strength, power, or violence. Moreover, the statute does not require commission of a battery on the officer or actual physical contact – whether initiated by the officer or the defendant. It also contemplates punishment for the active threat of such strength, power, or violence when that threat impedes the officer's ability to lawfully execute his or her duties.

*Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013). *See also Graham v. State*, 903 N.E.2d 963, 965 (Ind. 2009) ("force involved need not rise to the level of mayhem"; "even 'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice").

---

[3] Ind. Code § 35-44.1-3-1(a)(1) provides that a person commits resisting law enforcement when they knowingly or intentionally forcibly resist, obstruct, or interfere with a law enforcement officer or person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties.

[18] The State presented ample evidence that Herron forcibly resisted attempts by Officers Fredenburg and O'Neill to arrest him. He not only pulled away but "thrash[ed] back and forth" and tried to get away by engaging in a "furious back and forth" with the officers. *Transcript Vol. 2* at 132. Herron continued to struggle with the officers even after Officer Fredenburg issued a knee strike to try to take Herron to the ground. It took a punch in the face and the arrival of a third officer in order to subdue Herron. In sum, the evidence shows that Herron used strong, powerful means to impede the officers' in their lawful execution of their duties.

[19] Judgments affirmed.

Najam, J. and Robb, J., concur.