ATTORNEY FOR APPELLANT
Joel M. Schumm
Appellate Clinic

Shannon R. White, Certified Legal Intern
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Ann L. Goodwin
Special Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-1005-CR-256

JEFFREY THARP,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49G21-0902-CM-25807
The Honorable David Certo, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0905-CR-394

**February 16, 2011**

**Shepard, Chief Justice.**

In the second of two cases today addressing the importance of protective orders, we reverse Jeffrey Tharp's conviction for invasion of privacy. We concluded in our companion case Joslyn v. State, that a criminal defendant may be found guilty of stalking or invasion of privacy where he has actual knowledge of a protective order, even if there were certain omissions of civil process in serving the order upon him. Still, proof of knowledge must be beyond a reasonable doubt. The evidence of oral notice in this case, however, is insufficient to sustain Tharp's conviction.

## Facts and Procedural History

On October 1, 2008, Lisa Pitzer obtained an ex parte protective order against Jeffrey Tharp under Indiana Code § 34-26-5 (2008 & Supp. 2010). The order provided that Tharp was "restrained from committing further acts of abuse or threats of abuse" and "restrained from any contact." (State's Ex. 2.) Tharp and Pitzer's relationship was described in the order as a "former sexual relationship." (State's Ex. 2.) Tharp and Pitzer have a minor child in common, born in 2001. Tharp and Pitzer had most recently been in a relationship a year and a half to two years before Pitzer sought the protective order.

On February 16, 2009, officers of the Indianapolis Metropolitan Police Department pulled Tharp over after he failed to properly signal a turn. Pitzer and her daughter were among the passengers in the vehicle. After officers explained the nature of the stop, Tharp presented officers with an identification card. When asked where his driver's license was, Tharp said his license was suspended. Tharp commented to the officers that "he was probably going with [them] today." (Tr. at 19.)

A computer records check by the officers revealed that Tharp's driver's license was indeed suspended, that he had an active warrant for operating a vehicle while intoxicated, and that there was an active protective order against him involving Pitzer. The officers confirmed via dispatch that the protective order was still in place and had been served on Tharp. They arrested Tharp, and the State later charged him with two class A misdemeanors, driving with a suspended license, Ind. Code § 9-24-19-2 (2010), and invasion of privacy, Ind. Code § 35-46-1-15.1 (Supp. 2010).

On February 18, 2009, Pitzer filed a written request for dismissal of the protective order; the court granted her request the same day.

At a bench trial in April 2009, Officer Jason Thomas of the IMPD testified that when he and his trainee questioned Tharp and Pitzer about the protective order they both responded they were aware of the order, but believed it had been rescinded. Pitzer testified she had told Tharp

2

she had a "no contact" order "a couple of times" prior to the traffic stop, but she had also told him "I had thought I had took care of it." (Tr. at 31–32, 35, 37.)

Tharp testified, denying he had any knowledge of the protective order. He denied ever being served with the order, denied Pitzer ever told him about it, and denied he had told the arresting officers he was aware of the order. A return of service for the protective order, admitted at trial, indicated that a service attempt failed because Tharp "moved." (State's Ex. 2.)

The trial court found Tharp guilty as charged. It sentenced Tharp to concurrent terms of 128 days with 120 days suspended to probation. The court left the terms and conditions of probation up to the probation department.

On appeal, Tharp argues violation of his due process rights, insufficient evidence to support his conviction for invasion of privacy, and error in delegating authority over the terms of his probation to the probation department. (Appellant's Br. at 4–5.) The Court of Appeals largely agreed and reversed. Tharp v. State, 922 N.E.2d 641 (Ind. Ct. App. 2010). We granted transfer to address Tharp's conviction for invasion of privacy.

**Oral Notice**

On a challenge to the sufficiency of evidence, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect a fact-finders "exclusive province to weigh conflicting evidence." Alkhalidi v. State, 753 N.E.2d 625, 627 (Ind. 2001). We "consider only the probative evidence and reasonable inferences supporting the verdict." McHenry v. State, 820 N.E.2d 124, 126 (Ind. 2005). We will affirm "if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." Tobar v. State, 740 N.E.2d 109, 111–12 (Ind. 2000).

To convict Tharp of invasion of privacy as a class A misdemeanor, the State was required to prove Tharp "knowingly or intentionally" violated a protective order. Ind. Code § 35-46-1-15.1(2). Tharp contends that he did not knowingly violate the protective order because he did not receive sufficient notice of the protective order, noting that although Pitzer told him about the order she also told him it was no longer in effect.[1] (Appellant's Br. at 8.)

In finding Tharp guilty of invasion of privacy, the trial court noted:

> [T]he matter is more complicated in the evidence that's been presented, and the elements must be proven, but the evidence is uncontroverted that there was, in fact, a valid order for protection at the time of the arrest, as well as that the conduct would have violated an order for protection.
>
> The question remaining concerns the third element, and that's knowledge. Case law indicates there are a variety of ways someone can find out about an order of protection and know of it. There is also case law indicating that if somebody acts with a high probability that he or she is violating an order for protection, he or she is also to be held accountable. And, under the circumstances based on the testimony from the officer, from the complaining witness, I find that I'm convinced beyond a reasonable doubt the defendant is guilty of the charge of invasion of privacy and I'll enter a verdict of guilty in that charge, as well.

(Tr. 50–51.) Thus, the trial court was not persuaded by Tharp's testimony that he had no knowledge of the protective order and that he was first made aware of the order during the traffic stop. The police officer testified that Tharp admitted during the traffic stop he was aware of a protective order and Pitzer testified that she had informed Tharp of the order "a couple of times" and told him it was a "no contact" order. (Tr. at 32.) Pitzer also testified, however, that she told Tharp "[she] had took care of it." (Tr. at 32.) Recalling our standard of review, the fact finder is best positioned to judge the credibility of these witnesses, is free to credit or discredit testimony, and weigh conflicting evidence.

---

[1] Tharp also contends the court erred in delegating its responsibility to set conditions of probation to the probation department. (Appellant's Br. at 13.) Reversal of this conviction and Tharp's apparent completion of probation moot that issue.

The inference from Tharp's conviction is that the trial court gave credit to portions of Pitzer's testimony and the police officer's testimony that Tharp admitted he knew about the order. At the same time, the trial court would have to have discredited the portion of Pitzner's testimony that she told Tharp "[she] had took care of it." (Tr. at 32.)

A reading of Pitzer's testimony reveals that at the time she gave Tharp oral notice of the protective order, she also told him the order was inactive:

### DIRECT EXAMINATION OF LISA PITZER

Q  Did you obtain a protective order against Mr. Tharp?
A  Yes, ma'am.
Q  And, when did you do that?
A  I don't know. I know it was last year. I don't know exact date. September or October, somewhere around there.
Q  October of 2008?
A  Yes.
Q  And did you tell him about the protective order?
A  I didn't until when we was together. That's when I had talked to him. We weren't together at the time. I did not have any contact with him.
Q  And when were you together?
A  February, when we got pulled over.
Q  You told him about the protective order?
A  Uh-huh.
Q  Did you tell him about it prior to that date?
A  He apparently said he didn't know anything about it.
Q  No. I'm asking you what you told him.
A  Oh. Well, I had told him there was a protective order, but I had thought it had been dropped already, because I had been down there.
Q  When did you tell him about the protective order?
A  I honestly don't know. I told him a couple of times about it.
. . . .
Q  And what did you tell him about this protective order? Did you tell him he couldn't have contact with you?
A  Yes. I told him it was no contact, and that I had thought I had took care of it.
Q  Okay. And you told him about that prior to February 16th?
A  Right.

5

. . . .

Q    Right.  So, after the protective order was taken out in October of 2008, when did you first have contact thereafter?  You said three or four months.  That would make it January, February - -

. . .

A    I would say probably around in December is when we had contact.

Q    Okay.  And you said you can't recall, but you think you told him about the protective order?

A    Yeah.

Q    When was that?

A    That's when I had told him about it.

Q    And, what did you tell him?

A    That we had no contact and I had thought that I had went and had it uplifted.

(Tr. at 30–32, 35.)  In short, it appears that the only evidence that Tharp knew of the protective order was from Pitzer telling him about it — at the same time she told him it was no longer valid.

The Court of Appeals reversed Tharp's conviction, holding that oral notice can suffice but only when the notice comes from an agent of the State.  As explained in our decision today in Joslyn v. State, 49S04-1102-CR-85, slip op., (Ind. February 16, 2011), notice can be sufficient under the Civil Protection Order Act even when it comes from someone other than an agent of the State if it includes adequate indication of the order's terms. Id. at 7.

Still, the civil processes contemplated by the Act play an important role in assuring that respondents have an adequate opportunity to know that they have been enjoined and understand what is covered by the injunction.  To restate the test, was there substantial evidence of probative value from which a finder of fact could find beyond a reasonable doubt that Tharp knowingly violated a protective order?  We conclude that the mixed messages from Pitzer are oral notice of the type that is insufficient for a conviction.  Put another way, the evidence is insufficient that Tharp received adequate notice of the protective order.

## Conclusion

Tharp's conviction for invasion of privacy is reversed.

Dickson, Sullivan, Rucker, and David, JJ., concur.