Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Dec 10 2014, 10:12 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JENNIFER D. WILSON**
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KENNETH BIGGINS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WILLIAM M. HEDRICK,                )
                                   )
    Appellant-Defendant,       )
                                   )
       vs.                 )    No. 41A01-1403-CR-131
                                   )
STATE OF INDIANA,                  )
                                   )
    Appellee-Plaintiff.        )

APPEAL FROM THE JOHNSON CIRCUIT COURT
The Honorable K. Mark Loyd, Judge
Cause No. 41C01-1307-FD-487

**December 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

## Case Summary

William M. Hedrick appeals his convictions for class D felony invasion of privacy and class B misdemeanor harassment, arguing that the evidence is insufficient to support his convictions. We conclude that the evidence is sufficient and therefore affirm.

## Facts and Procedural History[1]

The facts most favorable to the convictions are that Hedrick had a child with Kristie Bricker. By July of 2012, Hedrick and Bricker were no longer involved in an intimate relationship. On July 3, 2012, the Marion Circuit Court issued an ex parte protective order ("the Protective Order") on behalf of Bricker against Hedrick that was to remain in effect for two years. The Protective Order provided that it was "not intended to interfere with any child visitation orders issued by any other court." State's Ex. B. Hedrick requested a hearing, which was continued by agreed motion and set for January 9, 2013.

---

[1] Hedrick's statement of the case and statement of the facts do not comply with the Indiana Appellate Rules. In his statement of the case, Hedrick sets forth in detail the testimony from his trial. His statement of the facts merely incorporates the statement of the case. Indiana Appellate Rule 46(A)(5) requires that the statement of the case "briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of these issues by the trial court or Administrative Agency. Page references to the Record on Appeal or Appendix are required in accordance with Rule 22(C)." Indiana Appellate Rule 46(A)(6) provides in relevant part,

> [The statement of the facts] shall describe the facts relevant to the issues presented for review but need not repeat what is in the statement of the case.
> (a) The facts shall be supported by page references to the Record on Appeal or Appendix in accordance with Rule 22(C).
> (b) The facts shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed.
> (c) The statement shall be in narrative form and shall not be a witness by witness summary of the testimony.

Further, Hedrick's citations to the transcript do not comply with Appellate Rule 22(C).

In December 2012, the parties attended a mediation conference to resolve child custody issues in a paternity action that Bricker had filed. Bricker did not expect to discuss the Protective Order at the mediation, but Hedrick wanted her to dismiss it. The parties apparently reached an agreement that was written by the mediator on a legal pad. The notation "PO Dismissed" was written on the first page. Defendant's Ex. 1. Bricker signed the agreement at the bottom of the second page. Hedrick did not sign the agreement. Bricker's understanding of the agreement was that the Protective Order was to be modified to allow communication regarding parenting time exchanges. The mediator filed a report in the paternity court stating that the parties had reached an agreement, but the paternity court took no further action.

The Protective Order was neither modified nor dismissed. On January 8, 2013, Bricker filed an agreed motion for a continuance of the hearing on the Protective Order in the Marion Circuit Court. The chronological case summary for the Protective Order action does not show any action taken thereafter.

In June and July of 2013, the parties communicated by text message and email. Bricker received messages from Hedrick that were "demeaning" and "threatening." Tr. at 36, 39. Bricker contacted Greenwood Police Detective Eric Klinkowski. He found the Protective Order and confirmed that it had not been dismissed or modified. Detective Klinkowski recovered and documented a series of profane and disparaging text messages on Bricker's phone from Hedrick. *Id*. at 76-78. For example, one message read, "I'm going to

3

sue you until you can't afford rice.  You're worthless."  *Id*. at 36.  Another message read,

"Yeah, I'm gonna pound you till there ain't nothing left."  *Id*. at 77.  Yet another read,

> I'm going to do whatever it takes to get rid of you.  You're the most worthless
> parent a kid could have.  Send that one to your ATTY.  When we get in front
> of the judge I'll explain how useless you are.  Better hope they don't take the
> new one too.

*Id*. at 76-77.[2]  As part of his investigation, Detective Klinkowski recorded a phone call that

Bricker made to Hedrick to find out when she could pick up their child.  During the call,

Hedrick began using profanity and threatening Bricker.  She reminded Hedrick that she had

the Protective Order in place, and he responded, "I don't give a f**k," and subsequently, "I

don't give a f**k what you have in place."  State's Ex. A.

The State charged Hedrick with class D felony invasion of privacy and class B

misdemeanor harassment.  A jury found Hedrick guilty as charged.

**Discussion and Decision**

Hedrick challenges the sufficiency of the evidence supporting his convictions.  Our

standard of review is well settled:

> [When] reviewing the sufficiency of the evidence needed to support a criminal
> conviction[,] ... we neither reweigh evidence nor judge witness credibility. We
> consider only the evidence supporting the judgment and any reasonable
> inferences that can be drawn from such evidence. We will affirm a conviction
> if there is substantial evidence of probative value such that a reasonable trier of
> fact could have concluded the defendant was guilty beyond a reasonable doubt.

*Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008) (citations omitted).

---

[2] Bricker had recently had another child, to which "the new one" presumably refers.

To convict Hedrick of class D felony invasion of privacy, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally violated a protective order to prevent domestic or family violence and had a prior unrelated conviction for invasion of privacy. Ind. Code § 35-46-1-15.1(1). The parties stipulated that Hedrick had a prior unrelated conviction for invasion of privacy. Hedrick argues that there was insufficient evidence that he knowingly or intentionally violated the Protective Order because he did not know that it still existed. He contends that his case is like *Tharp v. State*, 942 N.E.2d 814 (Ind. 2011).

We find *Tharp* readily distinguishable. Tharp never received formal notice that a protective order had been issued. At the same time that the protected person told Tharp about the protective order, she also told him that it was no longer valid. *Id*. at 815. Our supreme court held that the oral notice was insufficient to establish that Tharp knowingly violated a protective order.

Here, there is no dispute that Hedrick knew that the Protective Order had been issued. However, he asserts that the agreement reached at the paternity action mediation shows that he must have believed that it was dismissed. Hedrick's argument ignores contrary evidence. The chronological case summary in the Protective Order action shows that after the mediation was held, an *agreed* motion for continuance was filed. Therefore, Hedrick and his attorney must have been aware that no action had been taken on the Protective Order after the mediation. In addition, Hedrick's response when Bicker reminded him that the Protective Order was in place supports a reasonable inference that he was aware of it and simply did not

5

care. Hedrick's argument is merely a request to reweigh the evidence, which we must decline. We conclude that the evidence is sufficient to support Hedrick's conviction for invasion of privacy.

To convict Hedrick of class B misdemeanor harassment, the State was required to prove beyond a reasonable doubt that he called Bicker, communicated with her by mail or writing, or used a computer network or other electronic communication to communicate with her or transmit indecent or profane words to her and intended to harass, annoy, or alarm her with no intent of legitimate communication. Ind. Code § 35-45-2-2(a). Hedrick argues that his communications with Bicker were legitimate because their purpose was to discuss parenting time issues. Our review of the text messages and recorded phone call shows that Hedrick's comments went far beyond parenting time issues, and the jury could have reasonably concluded that such comments were intended only to harass, annoy, or alarm Bicker with no intent of legitimate communication. Accordingly, we conclude that the evidence is sufficient to support Hedrick's conviction for harassment.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.