## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 24 2015, 9:15 am

*Kevin S. Smith*

CLERK

of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Gary L. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Indiana Attorney General

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mark A. Hensley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

March 24, 2015

Court of Appeals Case No.
71A03-1411-CR-388

Appeal from the St. Joseph Superior Court
The Honorable Elizabeth Hurley, Judge
Cause No. 71D08-1404-FD-290

**Friedlander, Judge.**

[1] Mark A. Hensley appeals his conviction of Invasion of Privacy,[1] a class D felony, challenging the sufficiency of the evidence supporting the conviction as the sole issue on appeal.

[2] We affirm.

[3] The facts favorable to the conviction are on April 19, 2013, Hensley was convicted of domestic battery as a class A misdemeanor (CM 1718), as a result of which a no-contact order was issued forbidding Hensley to have contact with Jacqueline J. Hensley (the victim), who was his wife. On June 8, 2013, Hensley called his probation officer, Tamra Eddy, and informed her that he had been advised that the victim was in the hospital and that he was going to see her regardless of the no-contact order in CM 1718. On September 30, 2013, Hensley pleaded guilty to invasion of privacy as a class A misdemeanor (CM 4696). Based upon this conviction, a petition to revoke his probation in CM 1718 was filed on or about October 30, 2013. When Hensley failed to appear for hearing on the petition to revoke, a warrant was issued for his arrest.

[4] On April 23, 2014, Mishawaka police were dispatched to the victim's house with a report of a possible domestic dispute between Hensley and the victim.

---

[1] The version of the governing statute, i.e., Ind. Code Ann. § 35-46-1-15.1 (West, Westlaw 2013) in effect at the time this offense was committed classified it as a class D felony. This statute has since been revised and in its current form reclassifies this as a Level 6 felony. *See* I.C. § 35-46-1-15.1 (West, Westlaw current with legislation of the 2015 First Regular Session of the 119th General Assembly effective through February 23, 2015). The new classification, however, applies only to offenses committed on or after July 1, 2014. *See id.* Because this offense was committed before then, it retains the former classification.

When they knocked on the door, the victim responded and informed the officers that Hensley was intoxicated inside the house. She then allowed the officers to enter the house. Upon entering, Corporals Roberts and Porter observed Hensley lying on a stairway in an intoxicated condition. The officers obtained identification information and confirmed with the dispatcher that there was an outstanding warrant for Hensley's arrest in conjunction with CM 1718. Based upon this warrant, they placed Hensley under arrest, handcuffed him, and transported him to the hospital because of his intoxicated condition. Because there was still an active protective order in place forbidding Hensley from having any contact with the victim, the State charged Hensley with invasion of privacy as a class D felony. After a bench trial, Hensley was found guilty as charged and sentenced to two years' incarceration at the Department of Correction.

[5] Hensley contends the evidence was not sufficient to support his conviction. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Thang v. State*, 10 N.E.3d 1256 (Ind. 2014). We consider only "the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* at 1258 (quoting *Henley v. State*, 881 N.E.2d 639, 652 (Ind. 2008)). We will affirm a conviction "if there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* A finding of guilt may be based upon an inference that is reasonably drawn from

the evidence. All inferences are viewed in a light most favorable to the conviction. *Bailey v. State*, 979 N.E.2d 133 (Ind. 2012).

[6] Hensley contends that the 353-day probation that he was alleged to have violated in CM 1718 had expired at the time he was found in the victim's house on April 23, 2014. Perhaps more to the point, that is what he *claims* he believed. He further claims this is supported by the fact that "he was living with the protected party, … who also was not aware of the no contact order, as she became extremely upset when the police arrested her husband after she called 911 seeking medical assistance for him." *Appellant's Brief* at 5. Finally, he cites in support of his contention the fact that he ceased communicating with Eddy in October 2013 and through her was never informed that the no contact order had been extended beyond the original 353 days. Accordingly, he contends, he lacked the requisite mens rea to commit the offense of invasion of privacy because he did not realize that the no-contact order was still active on the day of the offense.

[7] To convict Hensley of invasion of privacy as a class D felony under the controlling version of I.C. § 35–46–1–15.1(2), the State was required to prove, among other things, that he knowingly or intentionally violated a protective order. In support of his argument that the evidence did not show that he knew of the existence of the present no-contact order, Hensley cites *Tharp v. State*, 942 N.E.2d 814 (Ind. 2011). In *Tharp*, our Supreme Court articulated the test of whether the State met its burden of proof with respect to the mens rea element of this offense as follows: "[W]as there substantial evidence of probative value

from which a finder of fact could find beyond a reasonable doubt that [the defendant] knowingly violated a protective order?" *Id.* at 818. Our Supreme Court reversed the conviction for invasion of privacy in *Tharp* upon finding that the defendant was aware of the existence of a protective order only because the protected person told him about it, but the protected person also told the defendant at the same time that she "thought that [she] had went and had it uplifted." *Id.* at 817. The Supreme Court concluded "that the mixed messages from [the protected person] are oral notice of the type that is insufficient for conviction." *Id.* at 818. We do not find the facts of this case sufficiently analogous to those in *Tharp* for that case to control the outcome here.

[8]  In *Tharp*, the protected person was the defendant's only source of information with regard to the existence of the protective order. That is not the case here. Eddy testified that on June 8, 2013, Hensley "called [her] from the hospital stating his wife was in the hospital and we could arrest him if we wanted to but he was going to see her regardless." *Transcript* at 20. This certainly evinced knowledge on Hensley's part that he was the subject of a no-contact order at the time. Eddy further testified that a predecessor of hers who had initially worked with Hensley reviewed the terms of Hensley's probation with him. This presumably included the existence of the no-contact order. She testified that she also reviewed the terms of the no-contact order with Hensley early in her dealings with him. Thus, there is ample evidence to establish that Hensley was aware from the outset that on or about April 19, 2013, he was subject of a no-contact order with respect to the victim.

[9] Hensley contends that the State nonetheless did not prove the requisite mens rea because the order entered on April 19, 2013 was to last 353 days, and he was convicted for violating it on April 23, 2014, which was more than 353 days later. He does not argue that the protective order had, in fact, expired at the time he was found in the victim's home, i.e., April 23, 2014. Rather, he argues that he was not *aware* that it was still in force on the day in question. As he frames it, "there is no evidence that Mark Hensley was ever informed that the no contact order had been extended beyond 353 days." *Appellant's Brief* at 6. He notes in support that Eddy acknowledged she did not have any contact with him after October 2013, which he claims indicated, or at least indicated to *him*, that his probation was no longer active.

[10] Although it is true that Eddy had no contact with Hensley after October 2013, this was not because she or the Probation Department viewed his probation as completed. When asked whether Hensley continued reporting to probation and working on a required Batterer's Intervention Program after she sent a probation violation report to the prosecutor's office on October 4, 2013, Eddy replied:

> No. He never completed Batter's [sic] Intervention Program. And actually in the case I had prior to that he also did not complete Batter's [sic] Intervention Program and the case was closed on [sic] unsatisfactorily because of that. And there was eventually a bench warrant ordered for this case for failure to appear on the PTR, the petition to revoke.

*Transcript* at 23-24. Thus, Eddy's lack of contact with Hensley after October 2013 was attributable to Hensley's failure to report and to complete a required program under the terms of his probation.

[11] In any event, the no-contact order stated on its face that it remained in effect until probation was terminated. Hensley pled guilty to a separate invasion of privacy in September 2013 (CM 4696), which was the basis upon which Eddy notified the prosecutor's office on October 4, 2013 that Hensley violated his probation. Thereafter, Hensley apparently ceased all contact with Eddy, and this would have been months before the original 353-day term of probation would expire. Could he reasonably have believed after pleading guilty to a separate charge of invasion of privacy during the probationary period that his term of probation would be deemed successfully completed six months hence, especially after he ceased communicating with Eddy and failed to complete a required program? We think not. Under these circumstances, Hensley's knowledge that the running of the 353-day term was suspended may reasonably be inferred. In other words, the State presented sufficient evidence to prove that Hensley knew that the protective order was still in place while the petition to revoke probation was pending. That petition was still pending on April 23, 2014, when the present offense was committed. Therefore, the evidence was sufficient to prove the mens rea element of this offense.

[12] Judgment affirmed.

Baker, J., and Najam, J., concur.