# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 22 2017, 7:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sarah Speck,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 22, 2017<br><br>Court of Appeals Case No.<br>49A02-1609-CR-2195<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Mark D. Stoner, Judge<br><br>Trial Court Cause No.<br>49G06-1601-F5-3318 |

**Bradford, Judge.**

# Case Summary

[1] At approximately 7:00 a.m., Alpine Group employee Robert Jennings arrived at work to find the door ajar and the office ransacked. Jennings noticed that a laptop had been moved from its normal location and placed near a door and a number of medical supplies had been placed in a cardboard box. Jennings became startled when he found Appellant-Defendant Sarah Speck sitting in a chair in the office. Speck did not have permission to enter the office. Speck was later found in possession of a lighter that had been stored in a desk drawer in the office.

[2] Speck was subsequently charged with Level 5 felony burglary and Class A misdemeanor attempted theft. She was found guilty as charged following a bench trial. The trial court subsequently merged the attempted theft conviction with the burglary conviction and sentenced Speck to 1095 days with 1073 days suspended. The trial court also placed Speck on probation for 730 days and ordered her to complete eighty hours of community service.

[3] On appeal, Speck challenges the sufficiency of the evidence to sustain her burglary conviction. Concluding that the evidence is sufficient to sustain the challenged conviction, we affirm.

# Facts and Procedural History

[4] In January of 2016, Alpine Group was a commercial entity consisting of three different businesses: a scrap business for semi-trailers and equipment, a trucking

company, and a land management company. Alpine Group had two locations in Marion County, one of which was located within the vast OmniSource compound located on South Holt Road. The OmniSource compound was surrounded by a ten-foot chain-link/barbed wire fence and secured by two gates. The OmniSource compound was surrounded by commercial property and the National Guard Armory. The nearest residential area was Mars Hill, which was located about one and one-half miles away.

The Alpine Group trailer was located approximately one-quarter mile within the OmniSource compound and was also surrounded by a fence. The trailer had two doors—one on each end—with the main employee entrance opening to a lunch room/common area. The other end of the trailer held a business office.

At the close of business on January 24, 2016, Alpine Group employee Jennings locked the door to the trailer and left the premises. When he left, all was well within the trailer and all items were in their normal locations.

At some point during the late night hours of January 24, 2016 or early morning hours of January 25, 2016, Speck squeezed between the two main gates of the OmniSource compound and approached the Alpine Group trailer. Although she observed no people or vehicles within the complex, Speck knocked on the trailer door. After receiving no answer, and knowing that she did not have permission to enter, Speck opened the door and entered the trailer.

[8] When Jennings returned at approximately 7:00 a.m. on January 25, 2016, he observed that the trailer door was slightly ajar. When he entered the trailer, he further observed that the trailer's business office had been ransacked. Specifically, Jennings observed that file and desk drawers had been opened, a closet door had been opened, a tool box had been disturbed, items had been scattered on the floor, a computer monitor had been overturned, a laptop computer had been removed from a shelf in the office and placed on a chair by the door, and medical supplies from a wall cabinet had been removed from the cabinet and placed in a small cardboard box.

[9] Upon turning on a light, Jennings was startled to find Speck sitting in a chair in the corner of the trailer. Speck, who had a pair of coveralls over her body, stated "Hi, I'm Sarah." Tr. p. 10. Jennings quickly left the trailer and called the police. Speck then exited the trailer and walked north onto the OmniSource property, which had no nearby exit.

[10] A short time later, members of the Indianapolis Metropolitan Police Department detained Speck. At this time, Speck was found in possession of a lighter that belonged to Jennings and had been stored in a desk drawer in the office.

[11] When confronted by Alpine Group National Operations Director Russell Law, Speck claimed that she did not know that the area was a secured facility. Speck, however, alluded to the fact that she had gone into something that was locked. Upon examining the trailer door, Law came to the belief that

something had been used on the door jam to open it. About a week later, an Alpine Group employee found a knife, which he claimed did not belong to him, in the pocket of the coveralls which Speck had used to cover herself.

[12] On January 26, 2016, Appellee-Plaintiff the State of Indiana ("the State") charged Speck with Level 5 felony burglary and Class A misdemeanor attempted theft. The case proceeded to a bench trial. Speck testified during trial, claiming that on the night in question, she had had an argument with a friend after which she left his Mars Hill residence on foot. Speck claimed that she walked through the neighborhood until she saw the OmniSource compound. She then squeezed between the two gates and approached the Alpine Group trailer. Speck, who was under the influence of Xanax, claimed to be "looking for people." Tr. p. 60. Speck claimed that when no one answered her knock on the trailer door, Speck entered, covered herself with a pair of coveralls and fell asleep. Speck denied touching or moving anything inside the trailer, claimed that the lighter found on her person belonged to her, and denied having a knife. The trial court found Speck guilty as charged.

[13] During a September 1, 2016 sentencing hearing, the trial court merged the attempted theft conviction into the Level 5 felony burglary conviction and sentenced Speck to 1095 days with 1073 days suspended. The trial court also placed Speck on probation for 730 days and ordered her to complete eighty hours of community service. This appeal follows.

# Discussion and Decision

[14]     Speck contends that the evidence is insufficient to sustain her conviction for

Level 5 felony burglary.

> When reviewing the sufficiency of the evidence to support a
> conviction, appellate courts must consider only the probative
> evidence and reasonable inferences supporting the verdict.  It is
> the fact-finder's role, not that of appellate courts, to assess
> witness credibility and weigh the evidence to determine whether
> it is sufficient to support a conviction.  To preserve this structure,
> when appellate courts are confronted with conflicting evidence,
> they must consider it most favorably to the trial court's ruling.
> Appellate courts affirm the conviction unless no reasonable fact-
> finder could find the elements of the crime proven beyond a
> reasonable doubt.  It is therefore not necessary that the evidence
> overcome every reasonable hypothesis of innocence.  The
> evidence is sufficient if an inference may reasonably be drawn
> from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and

quotations omitted).  "In essence, we assess only whether the verdict *could* be

reached based on reasonable inferences that may be drawn from the evidence

presented."  *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in

original).  Upon review, appellate courts do not reweigh the evidence or assess

the credibility of the witnesses.  *Stewart v. State*, 768 N.E.2d 433, 435 (Ind.

2002).

[15]     In charging Speck, the State alleged that "[o]n or about January 25, 2016,

[Speck] did break and enter the building or structure of Alpine Group, to-wit:

trailer; with the intent to commit a felony or theft therein, to-wit: theft[.]"

Appellant's App. Vol. II, p. 21.  Indiana Code section 35-43-2-1 provides that

"[a] person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony."  Thus, in order to prove that Speck committed the charged Level 5 felony, the State was required to prove that Speck broke and entered the building or structure of another with the intent to commit theft therein.

[16]  In challenging her conviction, Speck argues that the evidence is insufficient to prove that she had the requisite mens rea, *i.e.*, that she intended to commit a felony or theft once inside the Alpine Group's trailer.  "Intent, being a mental state, can only be established by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn therefrom."  *Richardson v. State*, 856 N.E.2d 1222, 1227 (Ind. Ct. App. 2006) (citing *Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003), *trans. denied*). The Indiana Supreme Court has held that in order to sufficiently prove a burglary charge, "the State must prove a specific fact that provides a solid basis to support a reasonable inference that the defendant had the specific intent to commit a felony."  *Freshwater v. State*, 853 N.E.2d 941, 944 (Ind. 2006).  With respect to proof of intent to commit a felony or theft, however, the Indiana Supreme Court has acknowledged that "'[b]urglars rarely announce their intentions at the moment of entry,' [*Gilliam v. State*, 508 N.E.2d 1270, 1271 (Ind. 1987)], and indeed many times there is no one around to hear them even if they were to do so."  *Baker*, 968 N.E.2d at 229.  "Hence, a burglar's intent to commit a specific felony at the time of the breaking and entering 'may be

inferred from the circumstances.'" *Id*. at 229-30 (quoting *Gilliam*, 508 N.E.2d at 1271).

[17] The evidence to prove intent "need not be insurmountable, but only provide a solid basis to support a reasonable inference that the defendant intended to commit the underlying [theft or] felony charged." *Gilliam*, 508 N.E.2d at 1271. "In other words, the evidence must support each inference—felonious intent and breaking and entering—independently, and neither inference should rely on the other for support." *Baker*, 968 N.E.2d at 230. "This is not to say, however, that the same piece of evidence cannot support both inferences." *Id*.

[18] In *Baker*, the Indiana Supreme Court determined that the evidence was sufficient to sustain Baker's burglary conviction, finding as follows:

> there was evidence that the defendant had been in the church kitchen and opened several cupboards and drawers while there. This evidence, standing alone, permits a reasonable inference of the defendant's felonious intent at the time of entry. Looking through the kitchen cupboards and drawers was not a necessary step in the act of breaking and entering the church. It was an additional act, separate and distinct from the breaking and entering, in which the defendant chose to engage. The opening of cabinets and drawers by an intruder suggests, among other things, that the person opening them was looking for something to take. From this, the jury reasonably could have concluded that the defendant broke and entered the church with an intent to commit theft. That there was no evidence that the defendant had rummaged through the drawers or cabinets, as the defendant argues, is of no consequence. The act of opening the drawers and cabinets alone was enough to support an inference of intent

> to commit theft.  Evidence of rummaging would simply bolster the already reasonable inference of intent.

*Id*. at 231.

In the instant matter, the evidence indicates that Jennings had locked the trailer when he left at the end of the business day on January 24, 2016, and that when he left, all was well within the trailer and all items were in their normal location.  When Jennings returned at approximately 7:00 a.m. on January 25, 2016, he found Speck sitting inside the trailer and that the trailer's business office had been ransacked.  Specifically, Jennings observed that file and desk drawers had been opened, a closet door had been opened, a tool box had been disturbed, items had been scattered on the floor, a computer monitor had been overturned, a laptop computer had been removed from a shelf in the office and placed on a chair by the door, and medical supplies from a wall cabinet had been removed from the cabinet and placed in a small cardboard box.

The evidence indicates that Speck moved the laptop computer and placed the medical supplies in a small cardboard box.  The location of the laptop computer and the placement of medical supplies into a box suggests that the items had been prepared for easy removal.  The Indiana Supreme Court has long held that evidence of intent to commit theft may be established by a showing that a defendant touched, disturbed, or even approached valuable property.  *Cash v. State*, 557 N.E.2d 1023, 1024 (Ind. 1990).  Further, ransacking the trailer was not a necessary step in the act of breaking and entering the trailer, but rather was an additional act in which Speck chose to engage.  Further, as the Indiana

Supreme Court has determined, "[t]he opening of cabinets and drawers by an intruder suggests, among other things, that the person opening them was looking for something to take." *Baker*, 968 N.E.2d at 231.

[21] In addition, after Speck was detained, she was found in possession of a lighter that belonged to Jennings and had been in the drawer of Jennings's desk. The fact that Speck left the trailer with Jennings's property found therein also supports the reasonable inference that she intend to commit theft when she broke and entered the trailer. *See McBride v. State*, 597 N.E.2d 992, 994 (Ind. Ct. App. 1992) (providing that possession of stolen property will support an inference of intent to commit theft at the time of a breaking and entering). Although Speck claimed at trial that she owned that lighter, the trial court, acting as the trier-of-fact, was in the best position to judge Speck's credibility given the seemingly unlikely fact that both she and Jennings would own the exact same lighter and that someone else had removed Jennings's lighter from his desk prior to Speck's entry into the trailer. *See Tharp v. State*, 942 N.E.2d 814, 816 (Ind. 2011) (providing that the fact-finder is best positioned to judge the credibility of witnesses and is therefore free to credit or discredit testimony and to weigh conflicting evidence).

[22] Speck admittedly broke into and entered the Alpine Group's trailer without permission. Upon review, we conclude that the evidence is sufficient to create a reasonable inference that Speck intended to commit theft once inside the trailer. Speck's claim to the contrary amounts to nothing more than an invitation for

this court to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

[23] The judgment of the trial court is affirmed.

Vaidik, C.J., and Brown, J., concur.