## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 18 2017, 8:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Christopher Murray,
*Appellant-Defendant,*

v.

State of Indiana
*Appellee-Plaintiff.*

July 18, 2017

Court of Appeals Case No.
49A02-1611-CR-2485

Appeal from the Marion Superior Court

The Honorable Angela Dow Davis, Judge

Trial Court Cause No.
49G16-1605-CM-17251

**Bradford, Judge.**

# Case Summary

On May 7, 2016, Officer James Perry of the Indianapolis Metropolitan Police Department ("IMPD") responded to a dispatch concerning an argument between a male and a female at the Kroger and Hardee's in Linwood Square Mall in Marion County. Officer Perry arrived on the scene and learned from the Hardee's staff that an argument ensued between a male and a female in the restaurant and that the male had begun to walk up 10th Street. Officer Perry found the male in question, Appellant-Defendant Christopher Murray, and began to question him. During their conversation, Officer Perry learned that the female in question, Tina Murray, was his wife. Officer Perry then conducted a warrant check during which he discovered that there was a protective order against Christopher that had been issued earlier that same day. Christopher was arrested for violating that protective order.

Appellee-Plaintiff the State of Indiana ("the State") subsequently charged Christopher with Count I, Invasion of Privacy. Christopher was found guilty as charged on October 6, 2016, following a bench trial. Christopher was sentenced to 180 days with 170 days suspended and was required to get mental health treatment at Midtown during probation. Christopher asserts that the State provided insufficient evidence that he knew about the protective order before his argument with Tina. Because we disagree, we affirm.

# Facts and Procedural History

[3]     On May 7, 2016, Tina was being harassed by Christopher at the Kroger in Linwood Square Mall. After becoming very uncomfortable and nervous, Tina began to bang on the doors of the Kroger to get the attention of the guards. She asked for their assistance in getting her husband to leave her alone. When the guards came to Tina's aid, she went and hid in the pharmacy of the Kroger. While hiding in the Kroger pharmacy, Kroger security called the police and officers from the IMPD responded to the scene. At 1:07 pm, these officers personally served Christopher with a Protective Order and ordered him off of the Kroger lot.

[4]     Later that same day, there was a dispatch concerning a disturbance between a male and a female at the Kroger in Linwood Square. The dispatch subsequently confirmed that the disturbance had moved to the Hardee's in that same strip mall. Officer Perry responded to the dispatch at approximately "1413 hours" or 2:13 pm. Appellant's App. Vol. II 15. Once on the scene, the Hardee's staff informed Officer Perry about the incident and that the male started walking westbound on 10th Street. As Officer Perry walked up 10th Street, he found Christopher at the bus stop on East 10th Street and North Euclid Avenue. Officer Perry began to question Christopher about the incident at Hardee's and Christopher explained that he was only trying to talk to his wife when an argument ensued. While speaking with Christopher, Officer Perry completed a warrant check where he found that Christopher had been personally served with a protective order earlier that same day. Officer Perry then arrested Christopher for violating the protective order.

The State charged Christopher with Count I, Invasion of Privacy. After a bench trial, the trial court found Christopher guilty on that charge. On October 6, 2016, Christopher was sentenced to 180 days with 170 days suspended. Christopher was also required to go to Midtown for mental health treatment during probation. On appeal, Christopher asserts that the State provided insufficient evidence to prove that he was aware of the protective order before the argument with his wife.

# Discussion and Decision

Christopher argues that the State did not provide sufficient evidence to support the claim that he knowingly violated the protective order. In reviewing questions of sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of witnesses. *Fleck v. State*, 508 N.E.2d 539, 540 (Ind. 1987). Furthermore, we "will affirm the conviction if evidence of probative value exists from which a fact-finder could find the defendant guilty beyond a reasonable doubt." *Atwood v. State*, 905 N.E.2d 479, 484 (Ind. Ct. App. 2009) (*citing Scott v. State*, 803 N.E.2d 1231, 1237 (Ind. Ct. App. 2004)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Berry v. State*, 4 N.E.3d 204, 206 (Ind. Ct. App. 2014) (*citing Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)). A person is guilty of invasion of privacy when he knowingly or intentionally violates a protective order put in place to prevent domestic or family violence or an issue involving a family or household member. *See* Ind. Code § 35-46-1-15.1(1).

[7] Christopher contends that the State did not adequately prove that the he knowingly or intentionally violated the protective order as required under Indiana Code § 35-46-1-15.1(1). Christopher also alleges that the protective order was served to Christopher only after his second argument with Tina. Regardless of these arguments, we agree with the trial court's finding that there was sufficient evidence to sustain Christopher's conviction of Count I Invasion of Privacy.

[8] Knowledge of a protective order must be proven beyond a reasonable doubt. *Tharp v. State*, 942 N.E.2d 814, 815 (Ind. 2011). There must be substantial evidence of "probative value from which a finder of fact could find beyond a reasonable doubt" that Christopher violated the protective order. *Id*. At 818. We believe that the State produced sufficient evidence to prove that Christopher had knowledge about the protective order against him before his second argument with Tina. According to State's Exhibit 2, Christopher was personally served with a protective order at the Kroger in Linwood Square at 1:07 pm. At trial, when asked whether he was personally served Christopher initially said no. However, when asked whether a police officer spoke to him the following day concerning a protective order, Christopher said, "Yes. It seemed- I was saying, it sounded kind of strange, those words; don't you gotta go to court over that?" Tr. p. 19. While Christopher may have been unsure about needing to go to court to have a protective order, his confusion as to whether he was personally served does not discredit the fact that, per the record, Christopher was served at 1:07 pm. "Not only must the fact-finder determine

whom to believe, but also what portions of conflicting testimony to believe." *Atwood*, 905 N.E.2d at 484 (Ind. Ct. App. 2009) (*citing In re J.L.T. v. State*, 712 N.E.2d 7 (Ind. Ct. App. 1999)). The trial court believed that Christopher was personally served at 1:07 pm at the Kroger in Linwood Square and that approximately one hour later, Christopher was found again trying to contact his wife at that same Kroger and later on at Hardee's. We will not second guess the trial court's determination in this regard. *See Fleck*, 508 N.E.2d at 540. While Christopher may not have understood the process of receiving a protective order, such alleged lack of understanding does not change the fact that he was personally served nor that he was made aware of the fact that he was not supposed to be in contact with Tina.

[9] Furthermore, the State used sufficient evidence to prove that the second argument that occurred between Christopher and Tina began after the protective order was issued. The probable cause affidavit that was completed by Officer Perry stated that he was dispatched to the Kroger at the Linwood Square Mall and later to the Hardee's in the same strip mall at about "1413 hours" or 2:13 pm. Appellant's App. Vol. II 15. The time at which Officer Perry was dispatched was a little over an hour after Christopher had initially been served with the protective order. Also, after Officer Perry approached Christopher and ran the warrant check he found the protective order. Had the protective order been issued after Christopher's second argument with Tina, Officer Perry would not have been able to find the protective order during the warrant check. Christopher points to Tina's inability to recall what time the

argument between her and Christopher occurred to discredit other evidence touching on when the protective order was issued. However, despite her confusion during her testimony, "the trier of fact is entitled to determine which version of the incident to credit." *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App 2007) (*citing Reyburn v. State*, 737 N.E.2d 1169, 1171 (Ind. Ct. App. 2000)). Therefore, we conclude that the State provided sufficient evidence to prove that Christopher knew that there was a protective order against him and that said warrant was issued prior to his second argument with Tina. The State provided sufficient evidence to convict Christopher of Count I Invasion of Privacy. We affirm the judgement of the trial court.

[10] The judgement of the trial court is affirmed.

Mathias, J., and Altice, J., concur.