## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 03 2020, 10:54 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Wright,<br>*Appellant-Defendant*,<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff*. | June 3, 2020<br><br>Court of Appeals Case No.<br>19A-CR-3012<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Angela Dow Davis, Judge<br><br>Trial Court Cause No.<br>49G16-1910-CM-39057 |

**Brown, Judge.**

Robert Wright appeals his conviction for invasion of privacy, a class A misdemeanor. We affirm.

## *Facts and Procedural History*

Wright's mother, K.W., obtained a protective order against him on September 9, 2019. Prior to the issuance of the protective order, Wright had been staying at K.W.'s house, which was a unit in a duplex she shared with her nephew, M.C., who lived in the other unit in the duplex.[1] On September 30, 2019, Indianapolis Metropolitan Police Officer Joshua Reese served Wright with the protective order and explained to him that "he couldn't have any contact with his mother and that he couldn't be on the property." Transcript Volume II at 11.

On October 5, 2019, Wright and his girlfriend were living in a car that he had moved "from in front of the house over to across the alley." *Id.* at 6. At some point, Wright and M.C. had an argument and M.C. or a neighbor called the police.[2] Officer Reese responded to the call and, upon arriving, he observed Wright "standing smack dab in the middle of the yard." *Id.* at 12. Wright was arrested for violating the protective order, and the State charged him with invasion of privacy, a class A misdemeanor.

---

[1] At trial, K.W. responded to the court's question and identified the pair of addresses associated with the duplex.

[2] During direct examination, K.W. indicated M.C. called the police, and during cross-examination, she stated "Allen called . . . right next door; he lives right next door." Transcript Volume II at 7.

[4] At the bench trial, the court admitted a copy of the protective order which states Wright shall be removed and excluded from K.W's residence and "is ordered to stay away from the residence" of K.W. Exhibits Volume at 5. It further states Wright is "ordered to stay away from the following place(s) that is/are frequented by" K.W., and then lists the address associated with K.W.'s part of the duplex. *Id.* During cross-examination K.W. responded to the question, "So, ma'am, so he didn't come to your . . . ," and stated: "No sir . . . my nephew, who lives next door, was coming up to take out some trash" and Wright "started talking to him and they had a disagreement." Transcript Volume II at 7. Answering a follow-up question, she continued: "Robert was across the street and then when he saw my nephew he came across this way, back over towards the house, and he went forward and argued with my nephew." *Id.* at 8. When the court asked K.W. how long Wright lived across the street, she answered: "He didn't – he didn't . . . my house sits on the alley – our house sits (inaudible) your Honor, and he just moved across the alley. He didn't have any place to go because I kicked him out. They just wanted to stay there for nothing and not get a place." *Id.* at 8-9. When the court asked if, when she obtained the protective order, he was "told he couldn't come near your house," she answered affirmatively. *Id.* at 8. During cross-examination Officer Reese responded to the question, "You can't say for sure if it was [the address associated with K.W.'s nephew's part of the duplex] or [the address associated with K.W.'s part of the duplex]," and stated: "It's the same house; it's just a double." *Id.* at 12.

[5] After the State rested its case, Wright moved for a voluntary dismissal under Ind. Trial Rule 41(B), which the court denied. Wright was convicted as charged and was sentenced to 180 days, with ten days executed and 170 served on probation, and to see a mental health counselor.

## *Discussion*

[6] The issue is whether the evidence is sufficient to sustain Wright's conviction. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the factfinder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* We will affirm unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[7] Ind. Code § 35-46-1-15.1 provides that a person who knowingly or intentionally violates a protective order to prevent domestic or family violence or harassment commits invasion of privacy, a class A misdemeanor. In this case, Wright was charged with knowingly violating a protective order to prevent domestic or family violence or harassment.

[8] Wright only disputes the knowing element of the violation of the protective order and argues that neither K.W.'s nor Officer Reese's testimony permitted an inference that he understood the protective order prohibiting him from being

on his mother's property meant he could not be in the yard of the duplex communicating with a resident of its other unit. He contends the facts that the house on the lot was a duplex and he went into the yard during an argument with the other resident leaves a reasonable doubt as to his *mens rea*.

[9] The State maintains the evidence is sufficient and argues: K.W. told Wright he could no longer live in her home and she obtained a protective order; he had knowledge that a protective order prevented him from being at her house, yet he lived in a car across the alley from her house; despite that he was aware that he had to stay away, he entered the yard of the structure in which K.W. resided; and that nothing in the record indicates the yard to the property was split or separated in any way to indicate it was not part of her property.

[10] Wright's contention that he did not understand the protective order, which he admits prohibited him from "being *on his mother's property*," Appellant's Brief at 7, prevented him from entering the yard of her residence is unavailing. "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). The protective order required him to "stay away" from K.W.'s address; however, when Officer Reese arrived, he observed Wright standing "smack dab in the middle" of the yard. Exhibits Volume at 5. Transcript Volume II at 12. In light of the record and the reasonable inferences supporting the verdict, we find Wright acted with a high probability that he was violating the protective order.

[11] To the extent Wright cites to *Tharp v. State*, 942 N.E.2d 814 (Ind. 2011), we note that the issue in *Tharp* was the defendant's knowledge of the existence of the protective order at all. "[I]t appear[ed] that the only evidence that Tharp knew of the protective order was from Pitzer telling him about it – at the same time she told him it was no longer valid." 942 N.E.2d at 817. This fell short of "substantial evidence of probative value from which a finder of fact could find beyond a reasonable doubt that Tharp knowingly violated a protective order." *Id.* at 818. More specifically, "the evidence [was] insufficient that Tharp received adequate notice of the protective order." *Id.* Here, Wright stayed at K.W.'s residence before she kicked him out. Moreover, Officer Reese served Wright with the protective order and explained that he could not have contact with her or be on the property. Thus, we find the circumstances in this case do not parallel those found in *Tharp*.

[12] For the foregoing reasons, we affirm Wright's conviction.

[13] Affirmed.

Najam, J., and Kirsch, J., concur.