## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 28 2020, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John L. Tompkins
Tompkins Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Antonio Lee Allen,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

December 28, 2020

Court of Appeals Case No.
20A-CR-382

Appeal from the Marion Superior Court

The Honorable Barbara Crawford, Judge

Trial Court Cause No.
49G01-1804-MR-13459

**Bradford, Chief Judge.**

# Case Summary

[1]     On April 15, 2016, Antonio Lee Allen and David Sanders engaged in an altercation that escalated to multiple gunshots fired. Sanders was struck by at least three of the gunshots—one in the thigh, one in the torso, and the other in the head near his right ear. Sanders died as a result of the multiple gunshot wounds. Allen was subsequently charged with and convicted of murder. On appeal, he contends that the evidence is insufficient to sustain his conviction. We affirm.

# Facts and Procedural History

[2]     On April 15, 2016, Allen and Sanders engaged in an altercation outside of a barbershop located near the intersection of Gateway Drive and High School Road in Indianapolis. After the altercation appeared to end, Sanders left the area on foot and Allen drove away in a white Toyota Camry. A few moments later, Sanders approached the driver's window of the Camry and engaged in a short conversation with Allen. As Sanders turned away, Allen fired multiple gunshots, three of which struck Sanders—one in the thigh, one in the torso, and the other in the head near his right ear. Sanders died as a result of the multiple gunshot wounds.

[3]     On April 25, 2018, the State charged Allen with murder. Following a jury trial, Allen was found guilty of murder. On January 24, 2020, the trial court

sentenced Allen to a fifty-five-year term of imprisonment in the Department of Correction.

# Discussion and Decision

Allen contends that the evidence is insufficient to sustain his conviction for murder.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind. 2007) (citations, emphasis, and quotations omitted). Stated differently, "'[w]e affirm the judgment unless no reasonable factfinder could find the defendant guilty.'" *Mardis v. State*, 72 N.E.3d 936, 938 (Ind. Ct. App. 2017) (quoting *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016)).

Indiana Code section 35-42-1-1(1) provides that a person who "knowingly or intentionally kills another human being … commits murder, a felony." Thus,

in order to convict Allen of murder, the State was required to prove that he knowingly or intentionally killed Sanders. In challenging the sufficiency of the evidence, Allen does not dispute that Sanders was murdered. Allen instead claims the State failed to prove beyond a reasonable doubt that he was the shooter.

[6] Various witnesses testified at trial regarding their observations just prior to and at the time of the shooting. Latansy Hutchins, who resided on Gateway Drive on the day of the shooting, went outside after she heard gunshots. She observed Sanders running, "trying to jump in people's cars," and heard him say "man I'm trying to get out of here." Tr. Vol. II p. 120. She observed a white Toyota Camry that was being driven by a black man with either "braids or dreadlocks," approach Sanders and lower its window slightly. Tr. Vol. II p. 114. She saw a gun "peeking out" of the driver's window and heard at least three more gunshots. Tr. Vol. II p. 115. According to Hutchins's testimony, the first struck Sanders in the thigh, the second hit a traffic sign, and the third struck Sanders by the ear.[1] Sanders collapsed after being struck by the ear and the blood coming from the wound "looked like a water fountain." Tr. Vol. II p. 115. Hutchins called 911 to report the shooting and provided dispatch with the license-plate number[2] for the white Camry.

---

[1] Hutchins testified that the second bullet hit a traffic sign. It is unclear from the record which bullet struck Sanders in the torso.

[2] The evidence establishes that the Camry was registered to Allen's son.

[7]     In the moments before Sanders was killed, Aura Morales, who was working in a restaurant located in the vicinity of the barbershop, heard "screams" coming from outside and, upon looking outside to see the source of the noise, observed Allen and Sanders engaging in a physical and verbal altercation. Tr. Vol. II p. 148. After going back inside the restaurant, she heard a gunshot. She looked towards the sound and observed Sanders running. A white Toyota Camry passed in front of her and, with "squealing" tires, then ran a red light. Tr. Vol. II p. 153. Morales heard more gunshots when the vehicle passed Sanders. Immediately after hearing the shots, Morales saw Sanders lying on the ground.

[8]     Just prior to the shooting, Melanie Gray, a passenger in a vehicle being driven by Brandon Young, observed Sanders and the driver of a light-colored vehicle engage in a short conversation. She also observed the driver of the vehicle holding a gun. As Sanders walked away from the vehicle, Gray heard "at least two" gunshots. Tr. Vol. III p. 14. Immediately after hearing the gunshots, the vehicle took "off fast" and Sanders stumbled and fell. Tr. Vol. III p. 15. While Gray did not get a good look at the physical features of the driver, she could see that the driver was an African-American male.

[9]     Young also observed Sanders speaking to the driver of a white vehicle and heard a "pop, pop, pop" sound. Tr. Vol. III p. 180. Immediately following the popping sound, Sanders "turned and fell," and the driver of the white vehicle "drove off real quick." Tr. Vol. III pp. 179, 182. Young did not see a gun, but because he had observed that the shots came from the white vehicle, he "assumed" the driver was the shooter. Tr. Vol. III p. 180.

[10]     While Allen denied being the shooter, he admitted during a police interview that he had been "beefing" with Sanders. State's Ex. 3, 10:30. Allen also admitted that he had driven away from the barbershop in a white Camry following his altercation with Sanders and that he had driven through the intersection where Sanders was fatally shot about the same time as the shooting. Further, although some of the witnesses indicated that there might have been more than one person in the Camry at the time of the shooting, Allen indicated that he had been the only individual in the vehicle following his altercation with Sanders.

[11]     Allen argues that the State's evidence regarding identity of the shooter "points to a light skinned African American male in his twenties or thirties with short hair or a fade. That evidence does not create a reasonable inference that Allen, a dark skinned, heavy set black male with long braids in his forties, was the driver/shooter." Appellant's Br. pp. 13–14. He further argues that none of the witnesses, who gave varying physical descriptions of the driver of the white Camry, identified him as the shooter and that the time stamp on a security video from a nearby apartment complex suggests that he had driven through the intersection in question approximately ten minutes before the shooting.

[12]     "Recalling our standard of review, the fact finder is best positioned to judge the credibility of these witnesses, is free to credit or discredit testimony, and weigh conflicting evidence." *Tharp v. State*, 942 N.E.2d 814, 816 (Ind. 2011). Furthermore, "[a] conviction for murder may be sustained on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of

guilt." *Fry v. State*, 25 N.E.3d 237, 248 (Ind. Ct. App. 2015) (citing *Lacey v. State*, 755 N.E.2d 576, 578 (Ind. 2001)).

[13] In this case, the State presented evidence that (1) Allen had engaged in an altercation with Sanders outside a barbershop in the moments before the shooting; (2) Allen admitted that he had driven the white Camry through the intersection where Sanders was shot about the same time as the shooting; (3) Hutchins, who gave the most detailed description of the driver of the vehicle, testified that the Camry was being driven by a black man with either braids or dreadlocks; (4) the Camry was registered to Allen's son; and (5) Allen claimed that he was alone in the vehicle when he drove it away from the barbershop following his altercation with Sanders. The witness testimony, considered together with Allen's admissions, supports a reasonable inference of guilt. As such, a reasonable jury could conclude that Allen was the person who shot and killed Sanders. The evidence, therefore, is sufficient to sustain Allen's conviction. Allen's claim to the contrary is merely a request that we reweigh the evidence, which we will not do. *Mardis*, 72 N.E.3d at 938 (providing that in challenging the State's evidence proving his identity as the person who shot and killed the victim, Mardis "simply seeks to have this court reweigh [the witness's] testimony and reassess his credibility, which we will not do.").

[14] The judgment of the trial court is affirmed.

Kirsch, J., and May, J., concur.